IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL VINCE OWENS, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 1:16-cv-697-TFM |
| | ) [wo] |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## **OPINION**

Following administrative denial of his application for Supplemental Security Income benefits under Title XVI of the Social Security Act and denial of his Title II application for disability insurance benefits beginning March 20, 2009, Michael Vince Owens ("Owens" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. (Tr. 17-34). When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying supplemental security income and disability benefits.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## I. STANDARD OF REVIEW

Owens seeks judicial review of the Commissioner of Social Security Administration's decision denying his application for disability insurance benefits and supplemental security income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm,reverse and remand with instructions, or reverse and render a judgment. *Id.*

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. In review of a social security case, the court will use the substantial evidence standard to affirm the Commissioner's decision if substantial evidence exists to support the decision. *Mitchell v. Commissioner,* 771 F.3d 780, 781 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The court is limited in its review, therefore the court is "preclude[d] [from] deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986)). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*); *Moreno v. Astrue,* 366 Fed. Appx. 23, 26-27 (11th Cir. 2010) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (Citation omitted).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (Citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are

both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[4] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456 (11th Cir. June 10, 2015). The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;[5]

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at

---

[4] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

---

[6]    *See* 20 C.F.R. pt. 404 subpt. P, app. 2

### III. BACKGROUND AND PROCEEDINGS

The ALJ determined Owens had not engaged in substantial gainful activity since March 20, 2009, the alleged onset date. (Tr. 22). The ALJ further concluded Owens suffered from severe impairments as follows: mild degenerative disc disease, mild arthritis of the hands, trigger finger in the right long finger and right thumb, bursitis in both shoulders, residual left leg pain, following a distant leg surgery, and depression. (Tr. 22). However, the ALJ found Owens did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 4040, Subpart P, Appendix 1. (Tr. 23). The ALJ opined Owens had the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.15679(b) and 416.967(b) except the claimant is limited to work which will require the claimant to: lift 20 pounds occasionally and 10 pounds frequently; sit 6 hours during an 8-hour work day; ; stand/walk 6 hours during an 8-hour workday; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally kneel, stoop, crouch and crawl; never work around unprotected heights; understand, remember and carry out simple tasks, with short/simple instructions; and have no more than occasional contact with the general public.

(Tr. 24).

Based upon the foregoing RFC assessment, the ALJ determined Mr. Owens was not capable of performing any of his past relevant work. (Tr. 29). Relying upon vocational expert testimony, the ALJ concluded there was other work available in significant numbers in the national economy which Owens could perform despite the stated RFC limitations. (Tr. 29). Accordingly, the ALJ concluded Owens had not been under a disability as defined in the Social Security Act from March 20, 2009, the alleged onset date, through the date of her decision. (Tr. 30). Owens appealed the ALJ's decision to the Appeals Council and his request for review was denied in a letter dated June 23, 2016. (Tr. 1). Thus, Owens exhausted all his administrative remedies and now appeals the Commissioner's final decision.

**IV. STATEMENT OF FACTS**

Owens was born on February 25, 1964. At the time of the hearing before the ALJ he was fifty years old, five feet six inches tall and weighed one hundred and ten pounds. He is right handed. (Tr. 40). He completed school through 8th or 9th grade and has a GED. (Tr. 293, 40-41). He has never been in the military. (Tr. 40-41). He can read, write, do basic math and make change. (Tr. 40-41).

Owens testified that the last time he worked was with A&H Steel in 2009. (Tr. 41). He stated his job had been as a fitter and welder. (Tr. 42). Owens stated that all of his prior jobs during the relevant time frame had also been in the welding industry. (Tr. 42). He further testified he had never been convicted of a felony; last drank alcohol two and a half years prior to the hearing; did not use street drugs; but did smoke cigarettes, which his wife purchases. (Tr. 43). Owens stated that he has tried to find work since 2009, but was unable to pass the required hearing and physical examinations. (Tr. 43).

Owens stated he was unable to work due to problems with his back, leg and arm. (Tr. 44). He stated he had surgery on his leg in the 1980's which resulted in severe, residual pain. (Tr. 44). He further stated he also had constant pain in his back, shoulders and arms and that he was unable to lift his arms above his head. (Tr. 44). Owens stated he received all his treatment from Dr. Paulk and Dr Paulk prescribed him medication including Ativan, Tramadol, and Mobic. (Tr. 44). He stated that anxiety was the reason for the Ativan. (Tr. 45). Owens stated his Tramadol and Mobic did help some with his pain; however, even with the medication the pain and anxiety was still present. (Tr. 45). He described himself as being "in a daze" and unable to pay attention and stated that he slept a lot and did not want to get out of bed. (Tr. 45). He said he was admitted for mental

health treatment after he attempted suicide in the 1990's, but had not been admitted lately. (Tr. 45-46).

Owens testified that he could walk up to 30 minutes at a time, stand for 10 minutes, and sit for about 20 to 30 minutes. (Tr. 46-47). He further stated that he had been advised against lifing greater than 20 pounds by Dr. Hanson. (Tr. 47). He also stated that he was not able to run personal errands such as banking and grocery shopping, but instead relied upon his wife to do these things. (Tr. 47). Owens testified that he had no driver's license and relied on his wife for transportation. (Tr. 47-48).

Owens stated that he could not climb a flight of stairs, could bend over with difficulty, and was unable to use his knees to stoop or squat. (Tr. 48). He testified that even though his fingertips went numb at times in both hands, he could use his fingers to grip a coffee cup and open a door nob. (Tr. 48). Owens stated he could pick up a pen or a piece of paper off the table. (Tr. 48). He stated he was unable to bathe and dress without assistance from his wife. (Tr. 48-49). Further Owens stated that his wife tended to all the household chores such as laundry, sweeping, mopping, taking out the trash and cleaning the bathroom. (Tr. 49).

Owens testified that he rarely left the house, but sat at home and walked around the house. (Tr. 49). He stated that he has no hobbies and spent most of his time watching television or sleeping. (Tr. 49). He testified however that he did attend church with his wife about twice a month. (Tr. 50). Owens also stated that he spent entire days in the bed due to depression and described his back, leg and arm pain as an 8 on a 10 point scale. (Tr. 50-51). He further testified that the pain from standing prevented him from doing basic things, such as fixing himself a glass of milk. (Tr. 50-51). He explained that his medicine made him "kind of drowsy." (Tr. 50). He

also testified that he lacked necessary funds to pay for pain management and that he and his wife were denied Obamacare because of lack of funds. (Tr. 51).

A vocational expert ("VE") testified at the hearing that Owens past work as an arc welder qualified as skilled and heavy work with an SVP of 5. (Tr. 52). The VE further stated there were no transferrable skills from this occupation to the sedentary exertional level. (Tr. 52). The ALJ asked the VE to consider whether there would be jobs available for a hypothetical individual of the same vocational profile as Owens who was limited as follows:

> Could lift 20 pounds occasionally, 20 pounds frequently; can sit at least six hours during an eight hour workday; stand and walk in combination at least six hours during an eight hour workday. This hypothetical individual would have the ability to occasionally climb ramps and stairs; should never climb ladders, ropes, and scaffolding could occasionally stoop, kneel, crouch, and crawl. The individual should avoid any kind of work at unprotected heights. The individual would have residual psychiatric symptoms resulting in a need for only simple tasks with short, simple instructions and no more than occasional contact with the general public. Given that hypothetical, are there any positions available for such a hypothetical individual?

(Tr. 53-54). The VE stated there would be jobs available such as a solderer on a production line, mailroom clerk, and maid – all light and unskilled positions. (Tr. 54-55). The ALJ then asked the VE to consider whether there would be jobs for a hypothetical individual of the same vocational profile as the claimant who would be off task up to 20 percent of the workday in addition to the normal break periods allowed. (Tr. 55). The VE stated that no jobs would be available. (Tr. 55).

**V. MEDICAL EVIDENCE**

The office notes of Dr. William Hanson from Southern Bone and Joint, show Plaintiff had lumbrosacral strain and mild bursitis in both shoulders when he was seen on April 25, 2013. (Tr. 247). Dr. Hanson also noted that the x-ray showed mild arthritic changes. (Tr. 248). Dr. Hanson remarked that Plaintiff "has not had any formal PT but currently he has no insurance and his wife

only makes a small amount of money every month so sending him for PT he would have to pay for, I am not sure would in the end be worth the money he would have to spend." (TR. 248).

Also, Emergency Room records show that Plaintiff was treated on seven occasions beginning on September 15, 2011 through July 30, 2013. (Tr. 253-285). The July 30, 2013 records show "no tenderness to palpation over the spine. Normal range of motion of the lumbar spine. Negative straight leg raising test bilaterally." His shoulders were examined and it was noted that Owens "has only about 90 degrees of abduction, painful external rotation . . . no loss of grips strength, no atrophy." With respect to his hands, it was noted Owens "has bilateral trigger fingers of middle and index fingers. Left thumb also has some increase in the size of his ligaments." (Tr. 255). On September 27, 2013, Plaintiff was also treated at the Emergency Room for a rash on his right side. (Tr. 441).

Other Emergency Room records list Owen's conditions as follows: hypertension, hyperlipidemia, fatigue/weakness, depression, low back pain, abnormality of gait, disorders of bursa and tendons in shoulder region, pain in limb, prostrate screening, diabetes mellitus Type II, alcohol dependence. (Tr. 258, 259, 260, 261, 264, 265, 270, 271 272, 273, 277, 278). On February 24, 2014 and April 22, 2014, Dr. Ted Paulk of First Med of Dothan saw Plaintiff. Both times Dr. Paulk reported that clinical examinations of Plaintiff's extremities were unremarkable. (Tr. 27, 310, 312). On February 12, 2014, an ultrasound was performed which showed gallstones and Plaintiff was diagnosed with cholelthiasis. (Tr. 316). Following a cholecystectomy, Plaintiff was diagnosed with cholelthiasis and cirrhosis. (Tr. 323).

Audio tests show that Owens has possible mild high frequency neurosensory loss. (Tr. 291). Randall Jordan, a licensed clinical psychologist, performed a consultative exam and opined that Owens' "ability to respond well to work pressures is compromised to a moderate to severe

degree due to psychiatric issues. Physical issues seem to be the primary limiting factor." (Tr. 295). Sam R. Banner, D.O., performed a consultative orthopedic exam, and reported "[f]ine and gross motions in both hands were satisfactory. Claimant was able to button and unbutton clothing without difficulty." (Tr. 301).

## VI. ISSUES

Owens raises two issues on appeal:

(1) Whether the Commissioner's decision should be reversed because ALJ's findings are internally inconsistent with respect to Owens' severe impairments and the stated RFC assessment and are therefore not supported by substantial evidence.

(2) Whether the Commissioner's decision should be reversed because the ALJ failed to properly evaluate Owen's subjective complaints of pain.

*See* Doc. 10 at p. 7.

## VII. DISCUSSION AND ANALYSIS

### A. Whether the ALJ's findings of Owen's severe impairments and the stated RFC assessment are supported by substantial evidence.

Plaintiff argues that ALJ failed to include limitations in the RFC for Owens' severe mild arthritis of the hands; trigger finger in the right long finger and right thumb; or bursitis in both shoulders and that this court should reverse for proper consideration of these conditions. (Pls. Brief, Doc. 10 at p. 9). The ALJ stated

> A longitudinal review of the claimant's medical evidence of record demonstrates the claimant suffers from bursitis in his shoulders. This diagnosis was made by an acceptable medical source based upon: the claimant's subjective reports of symptoms (e.g. pain in his shoulders); objective clinical signs (e.g. limited range of motion); and laboratory test results (e.g. x-rays). The claimant's shoulder impairment is treated conservatively with mild prescription analgesics.
>
> A longitudinal review of the claimant's medical evidence of record demonstrates the claimant suffers from arthritis of the hands and trigger fingers. This diagnosis was

> made by an acceptable medical source based upon: the claimant's subjective report of symptoms (e.g. hand pain); clinical observations of trigger fingers; and laboratory test results (e.g. x-rays). According to treatment records, these impairments have been present for years and are no worse now than when the claimant was performing substantial gainful activity (in a heavy occupation). The claimant's arthritis and trigger finger are managed with conservative treatment. Upon examination, Dr. Banner noted the claimant's "fine and gross motions in both hands were satisfactory".

(Tr. 27). Plaintiff argues that the ALJ's failure to include limitations for these conditions in the RFC presented to the VE is reversible error. The Court has independently reviewed the medical evidence of record and concludes that the ALJ's findings with respect to the minimal limitations associated with Plaintiff's bursitis and arthritis are supported by substantial evidence. *Henry,* 802 F.3d at 1267.

Indeed, Dr. Banner observed Plaintiff's ability "to button and unbutton his clothing without difficulty." (Tr. 301). With respect to Plaintiff's shoulders, Dr. Banner noted "Shoulder abduction and forward elevation 60 degrees bilateral – due to subjective pain; Shoulder internal rotation 40 degrees bilateral; Shoulder external rotation 90 degrees bilateral." (Tr. 299). Furthermore, upon examination of Plaintiff's shoulders, the ER records noted that Owens "has only about 90 degrees of abduction, painful external rotation . . . no loss of grips strength, no atrophy." (Tr. 255). With respect to his hands, an ER exam noted Owens "has bilateral trigger fingers of middle and index fingers. Left thumb also has some increase in the size of his ligaments." (Tr. 255). Also, in February and April of 2014, Dr. Ted Paulk of First Med of Dothan reported that physical clinical examinations of Plaintiff's extremities were "unremarkable". (Tr. 310, 312). However, Dr. Paulk reported that Plaintiff has been unable to control his arthritis pain with medication. (Tr. 312). Concerning the ALJ's findings of bursitis in the shoulders and arthritis in the hands, the ALJ concluded that Plaintiff's arthritic conditions were treated or managed with conservative treatment. (Tr. 27). Moreover, Plaintiff testified that he could grip cups, open door nobs, and pick up things

like pens or paper from a table. (Tr. 48). Accordingly, the Court concludes that substantial evidence supports the ALJ's determination as to the limited effects of Plaintiff's bursitis and arthritis. *Winschel*, 631 F.3d at 1178.

**B. Whether the ALJ failed to properly evaluate Owens' subjective complaints of pain?**

Plaintiff argues that the ALJ improperly discounted Plaintiff's complaints of debilitating pain. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C.§ 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223. (11th Cir. 1991).

In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry,* 782 F. 2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support, then the testimony must be accepted as true. *Hale,* 831 F.2d at 1012.

The ALJ stated

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 25). Plaintiff argues that the ALJ based her nondisability determination at least in part on Plaintiff's failure to seek "emergent care or inpatient hospitalization to treat alleged back pain" and because he has failed to use "aggressive analgesics, injection therapy, or physical therapy" (Tr. 26-27), but that his poverty prevented him from seeking these treatments. (Pls. Brief, Doc. 10 at pp. 12-15).

Plaintiff argues the ALJ's conclusion that Plaintiff failed to seek more aggressive treatment for his lumbago, back pain and degenerative disc disease was an implicit finding that his non-compliance was a basis for denying treatment. (Tr. 27). He further argues because the ALJ erred in failing to address Plaintiff's allegations of poverty that this is reversible error under *Dawkins v. Bowen*, 848 F. 2d 1211, 1213 (11th Cir. 1988) (Plaintiff's Brief, Doc. 10 at p. 14). However, in the instant case this reason was not the sole reason for the ALJ's decision to deny benefits. Indeed, the ALJ points to medical evidence of record as a basis for discounting Plaintiff's allegations of pain. (Tr. 27, 248, 301). Accordingly, because the Court concludes that the ALJ cited to substantial evidence in support of her decision that Plaintiff was not disabled, the Court concludes that Plaintiff's implicit argument as to poverty fails. *Ellison v. Barnhart,* 355 F. 3d 1272,1275 (11th Cir. 2003) (Distinguishing *Dawkins* because the ALJ's determination that Plaintiff "was not disabled was not significantly based on a finding of noncompliance.")

The Plaintiff also recognizes that the ALJ based her nondisability determination on medical evidence of lumbar spine x-rays showing only "mild degenerative disc disease" and Dr. Banner's

opinion that "fine and gross motions in both hands were satisfactory" (Tr. 27, 248, 301). Plaintiff argues, however, that these bases are not adequate to support the ALJ's conclusion which discounts Plaintiff's subjective complaints of pain. Indeed, Plaintiff argues his testimony that he suffered from pain which is 8 on a 10 point scale (Tr. 50) and Dr. Paulk's suggestion that he seek treatment from a pain clinic demonstrates that he suffered disabling pain. However, based on the Court's independent review of the entire record, the Court concludes that the reasons given by the ALJ are explicit and adequate under *Foote, id.,* are supported by substantial evidence and that the Commissioner's decision is due to be affirmed. *Winschel*, 631 F.3d at 1178.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision. A separate order will be entered.

DONE this 13th day of December, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE